Robert J. SPOKE, Relator,

v.

**COMMISSIONER OF JOBS AND TRAINING, Respondent.**

No. C4-87-2258.

Court of Appeals of Minnesota.

March 22, 1988.

John G. Engberg, Ronald G. Marks, Peterson, Engberg & Peterson, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrew, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and SCHULTZ*, JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.

Robert Spoke seeks review of a decision by the Department of Jobs and Training which determined that he was receiving a portion of his pension payable to his wife pursuant to a decree of marriage dissolution. We reverse.

## FACTS

On May 5, 1986, relator Robert Spoke's marriage was dissolved. The order for dissolution was characterized as a "Qualified Domestic Relations Order", in compliance with the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1056(d)(3) (1985). Pursuant to the terms of that order, Spoke's pension from his employer, Reserve Mining Company, was divided between himself and his wife.

The order indicated that it should operate as an assignment of one-half of Spoke's retirement benefits to his wife; that Spoke should designate his wife as a co-beneficiary of the retirement plan; that Spoke's wife was to be an "alternate payee" of the retirement plan; that Reserve was to serve as the plan administrator; that Spoke's wife was to be paid her benefits in such manner as she elected; that she was entitled to receive her benefits as and when Spoke was entitled to receive his benefits; and that if she were to die prior to receiving all of her benefits, those benefits should be paid in equal shares to her children.

On January 15, 1987, Spoke applied for Trade Readjustment Allowances ("TRA") under the International Trade and Invest-

ment Act, 19 U.S.C. §§ 2101–2487. Shortly thereafter, he applied for his pension benefits from Reserve. The total amount of Spoke's pension was determined to be $482.58 per month; however, one-half of this amount was payable to Spoke's wife pursuant to the Qualified Domestic Relations order.

In general, a worker's receipt of pension payments offsets his entitlement to TRA:

An amount of TRA payable * * * for any week shall be reduced (but not below zero) by:

(1) Income that is deductible from UI [unemployment insurance] under the disqualifying income provisions of the applicable State law or Federal unemployment compensation law * * *.

20 C.F.R. 617.13(c).

An individual shall not be eligible to receive benefits for any week with respect to which the individual is *receiving, has received, or has filed a claim for* remuneration in an amount equal to or in excess of the individual's weekly benefit amount in the form of

\* \* \* \* \* \*

(4) 50 percent of the pension payments from any fund, annuity or insurance maintained or contributed to by a base period employer * * * if the employee contributed to the fund, annuity or insurance and all of the pension payments if the employee did not contribute to the fund, annuity or insurance;

\* \* \* \* \* \*

Provided, that if such remuneration is less than the benefits which would otherwise be due under sections 268.03 to 268.-24, the individual shall be entitled to receive for such weeks, if otherwise eligible, benefits reduced by the amount of such remuneration * * *.

Minn.Stat. § 268.08, subd. 3 (1986) (emphasis added).

On June 15, 1987, a claims deputy with the Department of Jobs and Training deter-

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

mined that Spoke was entitled to receive TRA in the amount of $228.00 per week. The claims deputy also found, however, that Spoke was receiving monthly pension payments from Reserve in the amount of $482.58, which should be deductible in full from Spoke's TRA. The claims deputy concluded that the weekly equivalent of the $482.58 pension amount was $111.36. This sum, when deducted from Spoke's TRA, reduced his weekly TRA from $228 to $116.

Spoke appealed to a Department referee, claiming that his wife's portion of the pension should not be deemed "received" by him for purposes of the TRA offset. On appeal, a referee affirmed the claims deputy's decision, and on further appeal, a Commissioner's representative also affirmed, explaining as follows:

> Our difficulty with accepting the claimant's position is that if the court's order was not considered a "Qualified Domestic Relations Order" the claimant would not be arguing the position he is. In other words, if the claimant got all of his pension, but was under a court order to pay 50% of what he received over to his former spouse, there would be no question that he is receiving all of the pension. However, if the court's order is considered a "Qualified Domestic Relations Order" so that the pension plan administrator makes the payment, as opposed to the claimant himself, then the claimant argues that he cannot be considered to be "receiving" the whole pension. The result of this case cannot be controlled by whether the court's order is classified as a "Qualified Domestic Relations Order." The application of [the] statute should not be different if the claimant makes payment directly to his former spouse or indirectly through the pension plan administrator.

### ISSUE

Did Spoke "receive" the entire amount of his pension, requiring an offset of his TRA by that entire amount?

### ANALYSIS

The only question before us is whether Spoke is "receiving" his wife's portion of the pension payments within the meaning of Minn.Stat. § 268.08, subd. 3. This involves a question of statutory interpretation, upon which we are free to exercise our independent judgment. *Toro Company v. Commissioner of Economic Security*, 356 N.W.2d 789, 791 (Minn.Ct.App. 1984).

The legislature has indicated that when interpreting its statutes, "[w]ords and phrases are construed according to * * * their common and approved usage * * *." Minn.Stat. § 645.08(1) (1986). Clearly, one-half of Spoke's pension benefits are payable to his wife, and are therefore "received" by her, rather than Spoke. The benefits are paid directly by Reserve to Spoke's wife, who must declare them herself as income for tax purposes. 26 U.S.C. § 402(a)(9) (1986). In addition, the terms of the decree indicate that the benefits "shall be paid to the wife as alternative payee in such manner as she may elect * * *." If Spoke's wife should die, her children will receive her portion of the pension payments; even then they will not be received by Spoke.

Provisions of ERISA indicate that Qualified Domestic Relations Orders result in the assignment of the right to receive a pension or portions thereof. 29 U.S.C. § 1056(d). Language in that section also indicates that Spoke's wife must be considered a beneficiary under his pension plan, since she is characterized as an "alternate payee" by the dissolution order.

> The term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to *receive* all, or a portion of, the benefits payable under a plan with respect to such participant.

29 U.S.C. § 1056(d)(3)(K) (emphasis added).

### DECISION

The Commissioner's conclusion that Spoke is receiving pension payments which are paid directly to his wife results in a strained construction of the term "receipt"

—a result which the legislature could not have contemplated. For TRA purposes, Spoke did not receive the portion of his pension payable directly to his wife.

Reversed.